UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARY WHITE,

                Plaintiff,                           **MEMORANDUM & ORDER**

         - against -                              05-CV-2064 (RRM)(LB)

NEW YORK CITY DEPARTMENT OF
EDUCATION, JUDITH CHIN, LEON DASH,
DR. NICHOLAS STAPLETON, YOLANDA
CRUZ and TAMIKA NATER,

                Defendants.
-----------------------------------------------------------X
MAUSKOPF, United States District Judge.

Pursuant to 42 U.S.C. §2000e ("Title VII"), Plaintiff Mary White, a special education teacher at New York City Intermediate School 59 ("IS 59"), brings claims of race, national origin and gender discrimination against Defendant New York City Department of Education ("DOE"),[1] and individual Defendants Judith Chin, Leon Dash, Dr. Nicholas Stapleton, Yolanda Cruz and Tamika Nater. For the reasons below, Defendants' motion for summary judgment is GRANTED in its entirety and Plaintiff's claims are DISMISSED.

## BACKGROUND

Beginning in September 2001, Plaintiff Mary White, an African-American/Cherokee female, was employed as a special education teacher at IS 59. On January 6, 2004, IS 59 principal, Dr. Nicholas Stapleton, allegedly confronted White, demanding an explanation for White's absence at a scheduled faculty meeting. White alleges that during that exchange

---

[1] In Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Plf's Opp."), White concedes that Title VII – the sole claim asserted here – does not provide a cause of action against the individual defendants (see, Plf's Opp. at 18). Tomka v. Seiler, 66 F.3d 1295, 1317 (2d Cir. 1995). Accordingly, White's claims against Defendants Judith Chin, Leon Dash, Dr. Nicholas Stapleton, Yolanda Cruz and Tamika Nater are voluntarily dismissed with prejudice.

Stapleton referred to her as a "sick-minded woman" and instructed her to leave the school, an instruction that she did not follow.

DOE does not deny that the incident took place. However, they contend that White (a) was not subject to formal discipline for failing to attend the faculty meeting, and (b) that she did not file a formal union grievance with respect to that incident. White admits those facts, but notes that while she did not file a formal union grievance, she did submit a memorandum to her union representative describing her version of the incident.

On February 2, 2004, White additionally submitted a so-called "harassment log" to her union representative, purporting to detail, among other things, her issues with Stapleton, her complaints concerning other IS 59 staff and faculty, and a lack of classroom space and resources. Although White's opposition papers set forth her belief that the events documented in her harassment log were each motivated by unlawful discrimination, White admits that the harassment log makes no explicit reference to incidents of race, national origin or gender discrimination.

On May 4, 2004, an IS 59 student brought a corporal punishment claim against White, alleging that White had choked him. On May 20, 2004, pending investigation of the matter and pursuant to Chancellor's Regulation A-420, DOE's Division of Human Resources reassigned White from her IS 59 teaching duties, placing her at a non-teaching role at the DOE's Regional Operations Center.

On or about June 16, 2004, White wrote a letter to School Chancellor Joel Klein denying the allegations of corporal punishment against her, and objecting to her removal from the classroom. The letter asserts her belief that the allegations of corporal punishment and her

subsequent removal from IS 59 were motivated by discriminatory animus and orchestrated in retaliation for having reported Stapleton for verbal abuse.

On October 13, 2004, DOE's Confidential Investigator, Benjamin Francis, who had investigated the charges against White, found that the charges were substantiated.

On or about January 12, 2005, White filed a discrimination charge with the United States Equal Employment Opportunity Commission (the "EEOC"), alleging that she had been discriminated against on the basis of her race and that the allegations of corporal punishment had been made against her in retaliation for filing a harassment log with her union. Although she did not expressly complain about gender discrimination, White notes that she checked a box designated "other," as there was no box for gender.

On January 20, 2005, White and her union representative attended a disciplinary conference at the DOE, in connection with a charge of "conduct unbecoming a professional pedagogue," stemming from the corporal punishment allegations. At that conference, the DOE representative recommended that White receive a letter for reprimand and that her rating for the 2003-04 school year be downgraded from an "NA" rating to a "U" rating.

It is undisputed that White continued to receive her full salary and full medical benefits throughout the time she has been assigned to the non-school facility.

## DISCUSSION

### A. Summary Judgment

Summary judgment is warranted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Once a moving party meets its initial burden of demonstrating that no genuine issue of material fact exists, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in their favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). Conclusory allegations, conjecture, and speculation are insufficient to do so. Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). Nonetheless, in determining whether genuine issues of fact exist, the Court will "resolve all ambiguities and draw all permissible factual inferences" in the nonmovant's favor. Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004). Although a pro se party's submissions are to be liberally construed, see Weixel v. Bd. of Educ., 287 F.3d 138, 145-46 (2d Cir. 2002), a "bald assertion," unsupported by evidence, is nonetheless insufficient to overcome a motion for summary judgment. Carey v. Crezenzi, 923 F.2d 18, 21 (2d Cir. 1991).

### B.     Exhaustion of Remedies

As an initial matter, DOE contends that White's claims of gender discrimination are not reasonably related to her EEOC racial discrimination complaint and should therefore be dismissed. This Court agrees. A plaintiff cannot raise a Title VII discrimination claim without first exhausting administrative remedies. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82-83 (2d Cir. 2001) (citing Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)). The requirement that administrative remedies be exhausted is designed "to give the administrative agency the opportunity to investigate, mediate, and take remedial action." Stewart v. United States Immigration & Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985); Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded on other grounds by Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998). As such, a district court only has jurisdiction over Title VII claims that are either included in an EEOC charge or

are "reasonably related" to the discrimination alleged in the EEOC charge. See Butts, 990 F.2d at 1401.

A claim is considered "reasonably related" if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001). This determination focuses "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir.2003).[2] While the "reasonably-related" exception allows for "loose pleading," it does not encompass claims based on an entirely different type of discrimination from what was alleged in the initial EEOC charge, Ige v. Command Sec. Corp., No. 99-CV-6916, 2002 WL 720944, at *6 (E.D.N.Y. Mar.12, 2002), and courts have recognized that racial discrimination charges typically are not "reasonably related" to an EEOC complaint formally alleging only gender discrimination. See, e.g., O'Neal v. State Univ. of New York, No. 01-CV-7802, 2003 WL 1524664, at *3 (E.D.N.Y. Mar. 24, 2003) (holding Title VII race discrimination claim not "reasonably related" to the gender discrimination claim raised in the administrative complaint); Grillo v. N.Y. City Transit Auth., 122 F.Supp.2d 385, 391 (E.D.N.Y. 2000) ("gender discrimination claims are not 'reasonably related' to discrimination claims based on race or national religion"), aff'd 291 F.3d 231 (2d Cir. 2002).

In her opposition, White does not attempt to show a reasonable relation between her charges of racial and gender discrimination, but instead argues that she properly raised her gender discrimination claims before the EEOC and has therefore exhausted her remedies as

---

[2] The "reasonably related" exception to the exhaustion requirement " 'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering .'" Stewart, 762 at 201 (quoting Butts, 990 F.2d at 1402).

5

required. In support, she claims that: (1) in addition to complaining of race discrimination, she checked the box for "other" forms of discrimination, which encompass gender-based complaints; (2) she adequately recited Stapleton's accusation that she was a "sick-minded <u>woman</u>" (emphasis added); and (3) in connection with this action she testified as to her belief that Stapleton's words were motivated by gender animus. None of these contentions, however, are sufficient to establish that White has adequately presented or exhausted her gender discrimination remedies.

First, although the record indicates that White did indeed check the "other" box, the EEOC paperwork submitted in connection with the instant motion establishes that there is a box for discrimination based on the complainant's "sex," and that White failed to mark that box. Second, as will be described in more detail below, Stapleton's comment, while insulting, is not in and of itself indicative of gender-based discrimination. Finally, her subjective belief that Stapleton's conduct constituted gender discrimination, although relevant, was documented only in the context of depositions taken in this district court action and not before the EEOC. As such, White has failed to properly raise or exhaust her gender-based claims as required under Title VII and those claims are dismissed.

### C. <u>Timeliness</u>

Additionally, DOE contends that White's remaining claims are time-barred. Here too, they are correct. For a Title VII action to be timely, a plaintiff must file a discrimination complaint within 300 days of the unlawful discrimination action, with untimely discrimination complaints being subject to dismissal. <u>Quinn v. Green Tree Corp.</u>, 159 F.3d 759, 765 (2d Cir. 1998); <u>Gidron v. N.Y. City Bd. of Educ.</u>, No. 05-cv-2285, 2007 WL 4575111, at *8 (E.D.N.Y. Dec. 26, 2007). In this case, it is uncontested that White filed her EEOC complaint on January 18, 2005. Accordingly, White's allegations that she was subjected to discrimination between

2001 (when she arrived at IS 59) and September 2003 (when she was assigned her own classroom), are time-barred – having occurred more than 300 days prior to the filing of her EEOC complaint. Also untimely is any complaint concerning her alleged verbal altercation with Stapleton, which, by White's own admission, occurred on January 6, 2004 – a timeframe also in excess of Title VII's applicable 300-day limit. Even if these claims were reviewed on the merits, however, the same result would follow. Accordingly, the Court addresses the totality of White's claims below.

### D. Disparate Treatment and Hostile Work Environment

White's Title VII disparate treatment and hostile work environment claims are predicated on conclusory allegations of race, national origin and gender based animus.[3] Upon a review of the record, however, White does not and cannot establish that any of the acts complained of: (a) verbal harassment by Stapleton; (b) unfavorable employment conditions at IS 59; (c) allegedly bogus allegations of corporal punishment; (d) reassignment to an unfavorable, non-teaching facility; or (e) DOE disciplinary action, were the result of unlawful discrimination. Her failure to do so is fatal to the entirety of her Title VII claims.

Pursuant to the oft-cited disparate treatment standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 793 (1973), it is plaintiff's burden to establish a prima facie case of discrimination; i.e., that: (1) she is a member of protected class, (2) was performing her job satisfactorily, (3) was subject to an adverse employment action, and (4) that the adverse employment action took place under circumstances giving rise to an inference of discrimination. See Reeves v. Sanderson Plumbing, 530 U.S. 133, 142 (2000). If plaintiff does so, the burden

---

[3] White's gender discrimination claims are not reasonably related to her EEOC charge and are therefore not properly before this Court. However, for convenience's sake, because all of White's claims, even if properly brought, are without merit, the analysis below is conducted with respect to the entirety of White's claim, inclusive of claims otherwise subject to dismissal.

shifts to the defendant to articulate "some legitimate, non-discriminatory reason" for its action, which plaintiff must then have an opportunity to prove is not the true reason, but is merely a pretext for unlawful discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). At all times, however, the ultimate burden of establishing the essential and necessary fact of unlawful discrimination remains with plaintiff, see id., and failure to do so is fatal to such claims. Schnabel v. Abramson, 232 F.3d 83, 88-91(2d Cir. 2000).

Even in the context of a Title VII hostile work environment claim, which provides a right of action for "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of a victim's employment and create an abusive working environment," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993), plaintiff must still establish that the treatment complained of was motivated by unlawful discrimination. See Fitzgerald v. Henderson, 251 F.3d 345, 365 (2d Cir. 2001); Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). Simply put, plaintiff must demonstrate that the conduct occurred because of, not incidental to, the protected characteristic. Id. And, in the absence of such discrimination, a Title VII hostile work environment claim must also fail. See, e.g., Okon v. Appia, No. CV-06-6810 (CPS)(KAM), 2008 U.S. Dist. LEXIS 42412, at *33-34 (E.D.N.Y. May 29, 2008); Ellis v. Long Island Rail Rd. Co., No. 05-CV-3847(FB)(KAM), 2008 U.S. Dist. LEXIS 25597 at *21-22 (E.D.N.Y. Mar. 31, 2008); Gidron, 2007 U.S. Dist. LEXIS 94271 at *36-38.

For the reasons below, White fails to establish that any of the events complained of were motivated by her race, national origin or gender. As such, she fails to establish an essential element of both her disparate treatment and hostile work environment claims.

1) <u>Stapleton's Conduct</u>

White's allegations concerning Stapleton's conduct, even if true, do not suggest actionable discrimination. Although White complains of the manner in which Stapleton treated her, the Supreme Court has made clear that Title VII is not a civility statute. <u>Faragher v. City of Boca Raton</u>, 524 U.S. 755, 788 (1998). Title VII solely addresses conduct motivated (a) by animus towards members of protected class and (b) because of the victim's protected characteristics; it does not reach instances of generally poor behavior, personal animosity or even unfair treatment. <u>See</u> <u>Pesok v. Hebrew Union Coll.</u>, 01-CV-4552 (RLC), 2002 U.S. Dist. LEXIS 23376, at *18 (S.D.N.Y. Dec. 5, 2002). Although the summary judgment record does not indicate why their interaction devolved into Stapleton accusing White of being a "sick-minded woman," that epithet itself connotes no inherent racial, ethnic, or even gender bias sufficient to give rise to an actionable Title VII claim under either a disparate treatment or hostile work environment theory. Indeed, White's only basis for concluding that Stapleton's comment was motivated by unlawful discrimination is the anecdotal assertion that she had heard other, so-called "Caribbean" men express similar sentiments toward African-American women. (White Dep. 45). The racialized nature of White's own commentary aside, White acknowledged that Stapleton did not expressly reference her race or national origin during that exchange, nor does she ever recall even a single instance where Stapleton ever made such comments to or about White or any other IS 59 faculty member or employee.

Apart from White's conclusory and highly subjective belief that Caribbean men often view African-American woman disparagingly, White's only other evidence of unlawful bias is the unsupported contention that other Caribbean faculty members, also absent from the faculty meeting, were spared such allegedly harsh treatment. While comparison evidence is often a

9

useful means of establishing actionable discrimination in the absence of smoking-gun, direct evidence, see Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63 (2d Cir. 1997) (discrimination can be demonstrated through evidence that "compares plaintiff's treatment to those outside the protected class"), White's allegations of favorable treatment afforded to persons outside of her protected class are insufficient. In this case, White admits having no actual knowledge of which faculty members, if any, were actually present at or absent from the meeting. Compare with Gidron, 2007 U.S. Dist. LEXIS 94271 at *37-38 (disregarding unsupported claims of comparative favoritism, quoting BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) ("It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts.")). Accordingly, White fails adequately to establish either directly or indirectly any facts giving rise to an inference of unlawful discrimination sufficient to support a colorable claim of disparate treatment.

Stapleton's conduct similarly fails to support relief under a hostile work environment theory. "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." Alfano, 294 F.3d at 374 (internal quotations and citations omitted). Here, White's allegations concerning the January 6, 2004 altercation with Stapleton relate only to a single incident that is insufficiently severe to establish a hostile work environment claim. Even if it were sufficient, for the reasons discussed above, White's hostile work environment claim fails because of White's failure to establish the requisite causal link between Stapelton's conduct and invidious discrimination.

10

2) <u>Conditions at IS 59</u>

White contends that employment conditions at IS 59 support an inference of unlawful discrimination. To wit, she claims: (1) she did not have her own classroom when she first began at IS 59 in 2001; (2) she was subsequently provided a rat-infested room, which she shared with another teacher; and (3) she was not provided adequate teaching materials. Taken even in the light most favorable to her, these facts fail to establish discrimination sufficient to sustain either a disparate treatment or a hostile work environment claim under the requirements of Title VII.

First, as for White's claim that she was denied a classroom of her own due to discriminatory considerations, White herself testified that all special education teachers had to rotate classroom space given space concerns at IS 59. Second, White claims that when she was eventually given a space, it was in an unsanitary condition. She does not deny, however, that it was adequate when cleaned; moreover she admits that she shared use of that space with a Caucasian teacher, a fact that both corroborates the limited space available for new teachers at IS 59, and undercuts White's contention that her room assignment was racially motivated. See <u>Brennan v. Met. Opera Assoc., Inc.</u>, No. 95-cv-2926, 1998 WL 193204, at * 13 (S.D.N.Y. April 22, 1998) ("[P]laintiff must show that she experienced the hostility because of her membership in a protected class and not because the environment was generally hostile to everyone, including people outside the protected class."); <u>Pearson v. Bd. of Educ.</u>, 499 F. Supp. 2d 575, 597 (S.D.N.Y. 2007). Third, White's comparison evidence regarding working conditions is unavailing. While she claims that certain teachers did, indeed, have their own teaching space, she does not deny that the examples she cites were fully tenured teachers with significant seniority and thus not similarly situated exemplars. <u>Lavin-McEleney v. Marist Coll.</u>, 239 F.3d 476, 482 (2d Cir. 2001) (courts must account for all factors, including seniority, in determining

11

whether employees are substantially situated). That fact notwithstanding, White further concedes that she was granted one of the prime spaces she sought immediately upon retirement of a senior teacher, which also belies any claim that White was being deliberately deprived of adequate facilities on a discriminatory basis. Fourth, with respect to resources, White similarly fails to establish any causal connection between lack of resources and racial, national origin or gender animus by IS 59 administrators. Indeed, here, White's request for teaching supplies was denied for an alleged lack of funding. More importantly, that denial came from White's own African-American supervisor, a female teacher in the same protected class as White – a fact that additionally renders White's speculative and conclusory claims of racial, ethnic or gender prejudice even less plausible. See, e.g., Fosen v. The New York Times, No. 03-CV-3785, 2006 WL 2927611, at *5 (S.D.N.Y. Oct. 11, 2006); Toliver v. Cmty. Action Comm'n to Help the Economy, Inc., 613 F.Supp. 1070 (S.D.N.Y.1985) (noting that if decision-maker is in the same protected class as plaintiff, claims of discrimination become less plausible).

### E.  Retaliation

Claiming actionable retaliation, White complains that false corporal punishment allegations were brought against her, subjecting her to DOE discipline, including reassignment to a non-teaching post. She contends that these actions were taken against her in retaliation for various complaints to her union representatives, which detailed the altercation with Stapleton and set forth her general complaints regarding teaching conditions at IS 59. DOE moves for summary judgment on grounds that: (a) White's submissions, including the purported harassment log described above, make no allegation of invidious discrimination on the basis of any Title VII protected characteristic, including race, national origin or gender, thus her submissions do not amount to Title VII "protected activity"; and (b) that she cannot establish the

requisite causation between the alleged reporting action and the retaliatory conduct complained of. This Court agrees on both counts.

As set forth above, White's harassment log does not complain of invidious discrimination, nor can such discrimination be inferred from its allegations. As such, it is not a "protected activity" contemplated by Title VII. Carrion v. Local 32B-32J Serv. Employees Intern. Union, No. 03 Civ. 1896, 2005 WL 659321, at *16 (S.D.N.Y. March 21, 2005) (rejecting retaliation claim, finding that contrary to plaintiff's contention, his union grievances did not raise allegations of discrimination, and did not constitute protected activity under the anti-discrimination statutes).

But even if White did properly allege such discrimination, the subsequent DOE disciplinary proceedings against White do not amount to actionable retaliation. Here, White fails to establish any causal connection between her complaints and DOE's disciplinary actions. Lizardo v. Denny's Inc., 270 F.3d 94, 105 (2d Cir. 2001) (causal connection required to make a prima facie case of retaliation). Although White may indeed believe Stapleton was the source of the corporal punishment allegations, that view is unsupported by the record. Documentary evidence indicates that the matter came to the attention of IS 59 assistant principal, Wilburn Smith, who responded to accusations made by an IS 59 student and that student's parents. Smith's documentation further indicates that he, not Stapleton, reported the incident to DOE's Office of Special Investigations, in accordance with DOE's mandatory reporting policy. Thus, despite White's claims to the contrary, the student accusations and the mandatory reporting of that alleged incident set in motion DOE's disciplinary procedures, such events having no discernable connection to White's claims of discrimination. White's allegation of retaliation is thus without factual support, and the issue need not be further belabored. Summary judgment is

granted and the retaliation claim is dismissed.

## CONCLUSION

For the reasons above, DOE's motion for summary judgment on Plaintiff's Title VII claims for disparate treatment, hostile work environment and retaliation in GRANTED. Plaintiff's claims are DISMISSED in their entirety.

SO ORDERED.

Dated: September 29, 2008
Brooklyn, New York

_____
ROSLYNN R. MAUSKOPF
United States District Judge